UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| SUSAN HUNTZINGER, et al., | CIVIL ACTION NO. 5:17-184-KKC |
| Plaintiffs, | |
| V. | OPINION AND ORDER |
| TOBY COYLE, et al., | |
| Defendants. | |

*** *** ***

This matter is before the Court on Defendant's motion to exclude the expert opinion of Roger Clark (DE 61) and Plaintiffs' motion to exclude the expert opinion of David Jude. (DE 62.)  The motions having been fully briefed and the parties having agreed that a hearing is not required (DE 77), the matter is now ripe for the Court's review. For the reasons set forth herein, both Defendant's motion and Plaintiffs' motion are DENIED.

## I. BACKGROUND

This case arises out of the shooting of Kenneth Huntzinger ("Kenneth"). The Court has recounted the facts thoroughly in a previous order (DE 59) but will briefly summarize them again here.

On February 7, 2017, Kentucky State Police ("KSP") Trooper Sergeant Toby Coyle responded to a call for assistance placed by Plaintiff Susan Huntzinger ("Huntzinger"), Kenneth's wife. Huntzinger told the dispatcher that Kenneth had "over taken" his medication, including Ambien and other pills, and was trying to take their 14-year old son, R.H., out in his truck.  (DE 55-4 at 7.)  She further told the dispatcher that Kenneth had

1

gotten physical with her and R.H., had hit her vehicle while trying to push it out of the way, and would probably be combative with police upon their arrival.  (DE 55-4 at 11–12, 15.)

When Coyle arrived on the scene, he observed Kenneth trying to maneuver his vehicle. (DE 55-4 at 18.)  Coyle exited his cruiser, pulled out his gun and attempted to give Kenneth verbal commands which went unheeded.  (DE 55-2 at 13–16.)  What happened next is disputed, but Coyle ultimately shot Kenneth (DE 56-4 at 35; DE 56-9 at 1), who died from his injuries eight days later.  (DE 55-3 at 12.)

On April 20, 2017, Huntzinger—individually, as administrator of the Estate of Kenneth Huntzinger, and as custodian and legal guardian of R.H.—and her other son, Brandon Huntzinger ("Plaintiffs"), brought suit against Coyle, in his individual and official capacity, and the Commonwealth of Kentucky, doing business as the KSP.  (DE 1.)  Plaintiffs asserted claims pursuant to 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments, and various state law causes of action.  (DE 1 at 7–12.)  Plaintiffs subsequently dismissed all claims against the Commonwealth of Kentucky and Coyle in his official capacity.  (DE 7.)  Coyle also asserted counterclaims against the Plaintiffs, however, those claims have also been dismissed.  (DE 54.)  Plaintiffs' § 1983 claims and state law causes of action against Coyle in his individual capacity remain before the Court. Coyle filed a motion for summary judgment requesting dismissal of all remaining claims (DE 55), but the Court denied the motion in September 2020, finding that there were genuine issues of material fact. (DE 59.)

In preparation for trial, both parties filed motions to exclude the expert testimony of the opposing party's expert.  (DEs 61, 62.)  The motions are fully briefed, the parties have agreed that a hearing is not required (DE 77), and the matter is now ripe for the Court's review.

## II. STANDARD OF REVIEW

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court "established guidelines for district courts to use in determining the admissibility of expert testimony pursuant to Rules 702 and 104 of the Federal Rules of Evidence." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). *Daubert* applies to "scientific," "technical," and "otherwise specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "Although . . . the evaluation of expert testimony is generally left to juries, the Court emphasized the trial judge's 'gatekeeping' role with respect to expert proof." *Pride*, 218 F.3d at 577 (citing *Daubert*, 509 U.S. at 597–98). Federal Rule of Evidence 702 provides that an expert who is qualified:

> by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

A proposed expert witness "must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride*, 218 F.3d at 577 (quoting FED. R. EVID. 702). Next, the expert must testify as "to 'scientific, technical or other specialized knowledge.'" *Id.* (quoting FED. R. EVID. 702). "[T]his requirement serves to establish a standard of evidentiary reliability or trustworthiness" and "the *Daubert* Court instructed district courts . . . to determine whether the principles and methodology underlying the testimony itself are valid – not to second guess the validity of conclusions generated by otherwise valid methods, principles, and reasoning." *Id.* (citations and internal quotation marks omitted).

"Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). The fact that a purported expert's opinion was prepared solely for litigation may also be considered as a basis for exclusion. *Id.* (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007)). The trial court's gatekeeping role does not permit it to reject admissible expert testimony with a reasonable factual basis, but it does permit exclusion when an expert's testimony amounts to "mere guess or speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citing *U.S. v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993)).

If the Court decides that the expert testimony is both reliable and relevant, then the Court must also determine if the probative value of the expert testimony is outweighed by its prejudicial effect. *Daubert*, 509 U.S. at 595; *see also*, *United States v. Beverly*, 369 F.3d 516, 528 (6th Cir. 2004). The testimony must assist the trier of fact and "must 'fit' the facts of the case . . . ." *Pride*, 218 F.3d at 578 (citing *Daubert*, 509 U.S. at 592). But it is not "proper for the witness to testify as to a legal conclusion; it is the sole function of the trial judge to instruct the jury on the law." *United States v. Zipkin*, 729 F.2d 384, 397 (6th Cir. 1984). Nevertheless, "[t]he Rules' basic standard of relevance . . . is a liberal one," *Daubert*, 509 U.S. at 587.

Ultimately, a Rule 702 inquiry is "a flexible one." *Id.* at 594; *see also Kumho Tire Co.*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). The party proffering the expert testimony must demonstrate by a preponderance

of proof that the potential expert witness meets the requirements discussed above. *Pride*, 218 F.3d at 578 (citing *Daubert*, 509 U.S. at 592 n.10).

In evaluating whether to allow an expert witness to testify about some aspect of police affairs, the Court should look at the expert's particularized knowledge about the area based on training, research, and experience. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004). "Courts have permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact." *Id.* However, courts must ensure that police expert testimony focuses on facts rather than legal conclusions. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir.1994) ("We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important."); *see also DeMerrell v. City of Cheboygan*, 206 Fed. App'x 418, 426 (6th Cir. 2006) (finding a police use of force expert opinion improper when the expert described an officer's actions as "objectively unreasonable" and "improper and unnecessary" because those were legal conclusions). Ultimately, the Court has discretion to decide whether the expert's testimony will assist the particular jury in the case, or whether the expert's testimony will be too irrelevant to the ultimate issue at hand or too far within the realm of common knowledge and common sense. *Goodwin v. Richland Cty., Ohio*, 832 Fed. App'x 354, 359 (6th Cir. 2020).

### III. ANALYSIS

### A. Plaintiffs' Expert Roger Clark

Plaintiffs' expert Roger Clark has offered six numbered opinions as part of his written report. Coyle's motion to exclude refers to Clark's opinions as "irrelevant, unhelpful, or unreliable for a variety of reasons." (DE 61 at 1.) The Court will first evaluate Clark's

qualifications and then analyze the reliability of Clark's testimony and its helpfulness to the trier of fact.

### 1. Clark's Qualifications

Coyle does not appear to dispute Clark's qualifications. Clark spent twenty-seven (27) years in the Los Angeles County Sheriff's Department (LASD). He holds a California Peace Officer Standards and Training (POST) Advanced Certificate and graduated from the POST Command College, a two-year Masters level course of study in Police Administration. (DE 61-1 at 28.) During his time in the LASD, Clark spent many years conducting police work himself and training and supervising other officers. (DE 61-1 at 28–31.) Clark has also previously testified as an expert on various aspects of police affairs in numerous cases. (DE 61-1 at 31–34.) The Court finds that Clark is qualified to provide expert testimony in this case.

### 2. The Reliability of Clark's Testimony

The Court will next examine the reliability of Clark's testimony. A district court's reliability inquiry is a flexible one. *Daubert*, 509 U.S. at 594–95. The Supreme Court provided a list of potentially relevant factors, such as whether the expert's theory has been tested, peer-reviewed, or generally accepted. *See id.* at 591–95. However, that list is not exhaustive, nor is any one factor dispositive. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528–29. An expert witness may also rely solely or primarily on experience as long as the expert explains how that experience leads to the conclusion reached and how that experience is reliably applied to the facts. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). District courts are permitted "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152.

6

In formulating his opinion, Clark reviewed: the Complaint; various photographs; various KSP manuals; Kenneth's medical records; a post-shooting audio recording of Coyle's interview; a transcript of Coyle's post-shooting interview; various 3-D recreations of the incident; relevant deposition transcripts; Coyle's Motion for Summary Judgment; a relevant article in Police Magazine; and satellite imagery of the scene of the incident. (DE 61-1 at 3–4.) Clark then produced an overview of the events as he understood them based on all of the documents he reviewed. (DE 61-1 at 4–8.) Next, Clark described the basic rules regarding the use of lethal force by police officers and analyzed the incident at issue in accordance with those rules. (DE 61-1 at 21–26.) Finally, Clark offered his opinions. (DE 61-1 at 26–28.)

The Court finds that Clark's methodology was reliable and that he thoroughly analyzed the available evidence and applied his own experience to the facts in a manner that meets the appropriate standard for expert testimony on police use of force.

### 3. The Helpfulness of Clark's Testimony

Finally, the Court must determine whether Clark's testimony is relevant and helpful. Rule 702 requires that expert testimony assist the trier of fact. *Pride*, 218 F.3d at 578. At the same time, the testimony must not contain legal conclusions. *Zipkin*, 729 F.2d at 397. The Court will go through each of Clark's numbered opinions to make this determination.

Clark's first opinion is as follows:

*Throughout the Country, police departments for decades have trained their officers in safe and accepted ways to contain, assess and arrest subjects in order to avoid injuries and or deaths. These methods are well known among all police agencies and have been proven effective for the safety and welfare of both responding officers and the public. Sergeant Coyle - did not follow the tactical*

*guidelines required of every reasonably trained law enforcement officer in his response to the scene and his shooting death of Mr. Huntzinger. The manner in which this incident was grossly mishandled and resulted in the unnecessary shooting of Mr. Huntzinger reflected a complete lack of effective, appropriate, and/or meaningful training on the commonly understood and observed practices that are the foundation of my opinion. Accordingly, his use of force was grossly inappropriate, excessive, and unreasonable.*

*The actions of Sergeant Coyle are also indicative of the inadequate KSP policy and procedure – regarding high-risk vehicle pull-overs and shooting at a moving vehicle. As a result, the individual and collective actions of Sergeant Coyle were directly connected to the preventable, unnecessary and excessive shooting that occurred. His actions were also so far below the established professional standards that they can only be viewed as recklessly dangerous. As such, Sergeant Coyle's actions constituted unreasonable and excessive force and reflected a deliberate indifference to the life and safety of Mr. Huntzinger.*

(DE 61-1 at 26–27.)  The majority of this testimony is relevant, helpful to the trier fact, and properly classified as "opinion" testimony. However, it contains several impermissible legal conclusions with a potentially prejudicial effect that substantially outweighs their probative value. In accordance with Sixth Circuit guidance as to police expert testimony, *see, e.g., Berry*, 25 F.3d at 1353 and *DeMerrell*, 206 Fed. App'x at 418, the Court orders that the following sentences be stricken from the first numbered opinion in Clark's report:

- *". . . this incident was grossly mishandled and resulted in the unnecessary shooting of Mr. Huntzinger . . ."*

8

- *"Accordingly, his use of force was grossly inappropriate, excessive, and unreasonable."*

- *"As a result, the individual and collective actions of Sergeant Coyle were directly connected to the preventable, unnecessary and excessive shooting that occurred. His actions were also so far below the established professional standards that they can only be viewed as recklessly dangerous. As such, Sergeant Coyle's actions constituted unreasonable and excessive force and reflected a deliberate indifference to the life and safety of Mr. Huntzinger."*

Clark's second opinion is as follows:

> *Among an officer's overarching duties is to protect lives, including the lives of those they pursue to place into their custody. Officer Coyle had the responsibility to wait for backup, which was just minutes away. Instead, he exited his patrol car (which could have been used as a barrier to occlude Mr. Huntzinger's exit), drew his firearm, left cover, and placed himself in a situation where he fired his handgun, which led to the death of Mr. Huntzinger.*

(DE 61-1 at 27.)  Again, the Court finds the majority of this testimony relevant, helpful to the trier fact, and properly classified as "opinion" testimony. However, the Court orders that the following sentence be stricken because it may be construed as a legal conclusion and its probative value is outweighed by its prejudicial effect:

- *"Officer Coyle had the responsibility to wait for backup, which was just minutes away."*

Clark's third opinion is as follows:

> *As discussed above, officers throughout the nation are trained that their use of lethal force is only justified in defense of self or others who are at risk of great bodily harm or death – and only absent obvious reasonable alternatives. In this*

9

> *case, it is uncontested that Sergeant Coyle shot Mr. Huntzinger as he was*
> *positioned at the side of the truck as it passed by him and while he was not at*
> *any risk whatsoever of being struck by the truck. It is uncontested that Sergeant*
> *Coyle was not at any risk of harm when he fired his gun into Mr. Huntzinger.*

(DE 61-1 at 27.)  The Court finds the first sentence of this testimony relevant, helpful to the trier fact, and properly classified as "opinion" testimony. However, the Court orders that the following sentences be stricken because their probative value is outweighed by their prejudicial effect:

- *"In this case, it is uncontested that Sergeant Coyle shot Mr. Huntzinger as he was positioned at the side of the truck as it passed by him and while he was not at any risk whatsoever of being struck by the truck. It is uncontested that Sergeant Coyle was not at any risk of harm when he fired his gun into Mr. Huntzinger."*

Clark's fourth opinion is as follows:

> *Additionally, the use of lethal force to prevent Mr. Huntzinger from entering the*
> *roadway was excessive and unreasonable in this case. The physical evidence*
> *belies the claims that Mr. Huntzinger was desperately "ramming" his truck*
> *back and forth into the house and SUV in an irrational intent that would justify*
> *using lethal force to prevent him to drive any further. Rather, this is a simple*
> *case of "failure to yield" – a common occurrence – handled by responding officers*
> *acting as a team.*

(DE 61-1 at 27.)  The Court finds this testimony relevant, helpful to the trier fact, and properly classified as "opinion" testimony with the exception of the first sentence. Thus, the Court orders that the following sentence be stricken as an improper legal conclusion:

- *"Additionally, the use of lethal force to prevent Mr. Huntzinger from entering the roadway was excessive and unreasonable in this case."*

Clark's fifth opinion is as follows:

> *Despite his apparent deliberate departure from the required tactics, Sergeant Coyle was returned to duty without meaningful discipline and corrective retraining. Sergeant Coyle has stated that he was adequately trained to handle situations of this type, and he continues to hold to the opinion that he acted within the established policy of the KSP as it had been conveyed to him prior to this incident. Additionally, no new KSP policies have been implemented, and no existing KSP policies have been corrected or clarified since this incident. Additionally, no new training has occurred in the KSP since this incident. As such, the existing KSP policy facilitated the unreasonable and excessive force that occurred and reflected a deliberate indifference to the life and safety of Mr. Huntzinger.*

(DE 61-1 at 27–28.)  The Court finds the majority of this testimony relevant, helpful to the trier fact, and properly classified as "opinion" testimony. However, the Court orders that the following sentence be stricken as an improper legal conclusion:

- *"As such, the existing KSP policy facilitated the unreasonable and excessive force that occurred and reflected a deliberate indifference to the life and safety of Mr. Huntzinger."*

Clark's sixth opinion is as follows:

> *Across the country police departments for decades have recognized and trained their officers in safe and accepted ways to pursue, contain and arrest subjects in order to avoid deaths and excessive force, such as the one that occurred in*

> *this case. These methods are well known and proven effective for the safety and*
>
> *welfare of both officers and the public. KSP Sergeant Coyle appears to have used*
>
> *none of these, and there is no evidence that he was ever adequately trained in*
>
> *these methods, or, since this incident, retrained. There is nothing reflecting any*
>
> *new training or policies in any of the materials produced in this case. Without*
>
> *such, it is only a matter of time before additional tragic and unnecessary deaths*
>
> *occur again.*

(DE 61-1 at 28.)  The Court finds the majority of this testimony relevant, helpful to the trier fact, and properly classified as "opinion" testimony. However, the Court orders that the following be stricken as an improper legal conclusion and as irrelevant, respectively:

- *". . . , such as the one that occurred in this case."*
- *"Without such, it is only a matter of time before additional tragic and unnecessary deaths occur again."*

Having reviewed the expert testimony of Roger Clark, the Court denies Coyle's motion to exclude Clark's testimony and report, except as to the specific language identified above.

**B. Defendants' Expert David Jude**

Defendant's expert David Jude has also offered opinion testimony as part of his written report. Plaintiffs' motion to exclude argues that "Mr. Jude is unqualified, and his testimony is unreliable as it based [sic] entirely on insufficient data, void of independent validation, and contains imprecise, biased conclusions." (DE 62.)  The Court will first evaluate Jude's qualifications and then analyze the reliability of Jude's testimony and its helpfulness to the trier of fact.

### 1. Jude's Qualifications

Plaintiffs dispute Jude's qualifications to provide expert testimony. Jude spent twenty-three (23) years in law enforcement, including eighteen (18) years as part of the Kentucky State Police. He holds certifications as an instructor in various police tactics courses and developed the curriculums for several other courses. (DE 62-3 at 4.)  During his time in law enforcement, Jude spent many years conducting police work himself and training and supervising other officers, including as commander of the KSP Academy.  (DE 62-3 at 2–3.)  Jude has not previously testified as an expert on police use of force, but that is certainly not fatal. *See United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) ("[T]here is a first time in court for every expert[.]"). Given Jude's professional experience, the Court finds that he is qualified to provide expert testimony in this case.

### 2. The Reliability of Jude's Testimony

The Court will next examine the reliability of Jude's testimony using the same standard laid out in Section III.A.2. In addition, the Court will analyze Plaintiffs' concerns about Jude's potential bias as a former member of the KSP, including at the time of this incident.

In formulating his opinion, Jude reviewed: the Complaint; the multi-volume KSP investigation related to this incident; relevant deposition transcripts; various relevant legal opinions; and Roger Clark's expert report.  (DE 62-3 at 5.)  Jude then produced an overview of the events as he understood them based on all of the materials he reviewed.  (DE 62-3 at 5–9.)  Finally, Jude offered his opinions, commented on Clark's expert report, and provided some concluding thoughts.  (DE 62-3 at 9–11.)

The Court finds that Jude's methodology was reliable and that he thoroughly analyzed the available evidence and applied his own experience to the facts in a manner that meets the appropriate standard for expert testimony on police use of force.

13

As to Plaintiffs' concerns about Jude's potential bias as a former member of the KSP, including at the time of this incident, those concerns are not a reason to exclude Jude's testimony. "Determining the credibility of a witness, which includes '[a]ssessing the potential bias of the expert witness,' is ultimately an issue for the jury." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 510 F. Supp. 3d 538, 556 (S.D. Ohio 2020) (quoting *Cruz-Vazquez v. Mennonite General Hosp., Inc.*, 613 F.3d 54, 59 (1st Cir. 2010)).

### 3. The Helpfulness of Jude's Testimony

Finally, the Court must determine whether Jude's testimony is relevant and helpful using the same standard laid out in Section III.A.3. The Court finds the majority of Jude's testimony relevant, helpful to the trier fact, and properly classified as "opinion" testimony. However, the Court orders that the following be stricken as they could be construed as improper legal conclusions or improper speculation:

- *". . . Sergeant Coyle demonstrated a desire to find the least amount of force necessary to effectively resolve the situation."* (DE 62-3 at 9.)

- *". . . Mr. Huntzinger escalated the interaction to a level where lethal force was justified."* (DE 62-3 at 10.)

- *"At this point, Sergeant Coyle's life was in danger of serious physical injury or death."* (DE 62-3 at 10.)

- *"Sergeant Coyle, in reasonable fear that he or a member of the general public would be killed or seriously injured by Mr. Huntzinger in his truck, made the difficult, unfortunate, but proper decision to discharge his firearm into the truck and ultimately into Huntzinger with the intent to stop the threat to himself and others."* (DE 62-3 at 10–11.)

14

Having reviewed the expert testimony of David Jude, the Court denies Plaintiffs' motion to exclude Jude's testimony, except as to the specific language identified above.

### IV. CONCLUSION

In sum, the Court finds that the testimony of both experts complies with the standards for expert testimony set forth in Rule 702 and *Daubert*, as interpreted by the Sixth Circuit, except in the specific instances identified by the Court above. Accordingly, for the reasons set forth herein, **IT IS HEREBY ORDERED**:

(1) Defendant's motion to exclude Plaintiffs' Expert (DE 61) is **DENIED** except as to the specific testimony identified by the Court; and

(2) Plaintiffs' motion to exclude Defendant's Expert (DE 62) is **DENIED** except as to the specific testimony identified by the Court.

This 10th day of January, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY